UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL D. STEVENSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:08-CV-0168-G |
| VERIZON WIRELESS (VAW) LLC, ) | |
| d/b/a VERIZON WIRELESS, ET AL., ) | **ECF** |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendants Verizon Wireless, LLC d/b/a Verizon Wireless, and Verizon Wireless Texas, LLC d/b/a Verizon Wireless (hereinafter collectively referred to as "Verizon" or "the defendants") to dismiss the majority of the claims brought by the plaintiff, Michael D. Stevenson ("Stevenson" or "the plaintiff"). For the reasons discussed below, the motion is granted in part and denied in part.

I. BACKGROUND

In September of 1996, Verizon hired the plaintiff as a retail sales associate. Plaintiff's Original Petition ("Petition") at 3. By January of 2002, he had achieved

the status of District Manager.  *Id.*  Around March 2005, Stevenson began to notice what he believed to be discriminatory practices at Verizon.  *Id.* at 4.  He was "particularly troubled" by the actions of Dolores Skarjune ("Skarjune"), his supervisor at the time.  *Id.*  Although Stevenson notified the Region President of Central Texas, Luis Cruz ("Cruz"), of these practices, Stevenson was not satisfied with Cruz's response.  According to Stevenson, Cruz merely told him that he should consider "stepping down" because "sometimes life just isn't fair."  *Id.*  Stevenson then filed an internal complaint with Verizon's human resources department, alleging that Skarjune had harassed and mistreated African American employees such as himself.  *Id.*  Stevenson contends that this complaint prompted Cruz to take retaliatory actions against him.  *Id.*

According to Stevenson, these retaliatory actions included Cruz moving him "from the high producing and profitable accounts that Mr. Stevenson had invested considerable time and energy developing."  *Id.*  Verizon admits that it transferred the accounts, but contends that the reassignments were not retaliatory, but part of a company wide reorganization of its business model.  Brief in Support of Defendants' Motion to Dismiss ("Motion to Dismiss") at 6.  Verizon intended this reorganization to boost sales through indirect channels such as Wal-Mart.  *Id.*  The reorganization plan envisioned increasing the minimum sales requirements for all District Managers, including Stevenson.  *Id.*  Stevenson, however, contends that this increase in sales

requirements was aimed only at him, and that the Hispanic District Managers who took over his old accounts were not required to meet the same standards. Petition at 5. He also contends that he was assigned to a new geographical area as a result of the reorganization. Stevenson maintains this area had been grossly neglected prior to his assignment to it. *Id.* He viewed this reassignment as retaliatory, arguing that Cruz assigned him the impossible task of increasing sales in a previously neglected region in the hopes that he would fail. *Id.* When Stevenson failed to meet the minimum sales requirements, Verizon issued a written warning on June 5, 2007. *Id*. at 6.

After Stevenson received the first written warning, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") on July 9, 2007. Motion to Dismiss at 8. During that same month, Stevenson -- in his capacity as a Verizon employee -- was set to be deposed as a witness in an arbitration proceeding. Petition at 6-7. Before the deposition, Stevenson met with attorneys for Verizon in order to prepare. *Id.* at 7. During that preparation meeting, the attorneys showed Stevenson a set of questions they planned to ask during the deposition, and a set of answers for Stevenson to look at to aid him in preparing for the deposition. Stevenson felt the attorneys were putting words in his mouth and were not interested in the truth. *Id.* Stevenson informed them that he would only answer the questions truthfully. *Id.* On the day of the deposition, July 20, 2007, Stevenson answered the questions

truthfully.  Shortly thereafter, on July 27, 2007, Stevenson received a final written warning regarding his failure to meet the minimum sales requirements.  *Id.* at 8.  Stevenson believed this was in retaliation for his refusal to commit perjury for Verizon.  *Id.*

On September 24, 2007, Verizon suspended Stevenson with pay.  On October 11, 2007, Verizon terminated Stevenson's employment.  *Id.*  Verizon contacted Stevenson and informed him that the termination was a result of his violating the code of business conduct.  *Id.* at 8-9.  Specifically, Verizon asserted that Stevenson had disclosed confidential, proprietary and privileged information.  Motion to Dismiss at 9.  Stevenson contends, however, that he was actually terminated for filing internal complaints with human resources, filing complaints with the EEOC, and refusing to commit perjury during his deposition on July 20, 2007.  Petition at 9.

Stevenson filed this suit against the defendants on December 27, 2007.  The complaint alleged that Verizon had (1) violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by discriminating against him on the basis of race, (2) violated the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.*, by discriminating against him on the basis of race, (3) committed the tort of  intentional infliction of emotional distress ("IIED"), (4) retaliated against him for filing internal complaints with human resources and a complaint with the EEOC, and (5) wrongfully discharged him as a result of his refusal

to commit perjury during the July 20, 2007 deposition. *See generally* Petition. Verizon now moves to dismiss all those claims except one. *See generally* Motion to Dismiss. Verizon does not seek to dismiss Stevenson's claim that Verizon retaliated against him for filing the internal complaint with the human resources department on May 30, 2005.

## II. ANALYSIS

### A. The Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, __ U.S. __, 127 S.Ct. 1955, 1974 (2007)), *cert. denied*, __ U.S. __, 128 S.Ct. 1230 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 127 S.Ct. at 1965). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable

to the plaintiff." *Id.* (internal quotation marks omitted) (quoting *Martin K. Eby Construction Company v. Dallas Area Rapid Transit*, 369 F.3d 464 (5th Cir. 2004)).

B. <u>The Title VII Claims and TCHRA Claims are Unexhausted</u>

Stevenson contends that Verizon engaged in unlawful employment practices within the meaning of Title VII and the TCHRA by discriminating against him on the basis of his race or color. Petition at 9. *See* 42 U.S.C. § 2000e-2(a)(1) (making it unlawful for an employer to "discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin"); TEX. LABOR CODE § 21.051 (stating it is unlawful for an employer to discharge "or discriminate[] in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" because of that individual's race or color). Specifically, Stevenson contends that Skarjune and Cruz harassed him and reassigned him to less successful accounts and subjected him to higher sales standards as a result of his race. Petition at 4-5.

According to Verizon, these claims must be dismissed. Verizon contends that Stevenson did not exhaust his administrative remedies by filing a charge with the EEOC within the required time period after the alleged unlawful employment practice occurred. Motion to Dismiss at 9. The court agrees.

A plaintiff must exhaust administrative remedies prior to filing suit under Title VII and the TCHRA. *Barnes v. Levitt*, 118 F.3d 404, 408 (5th Cir. 1997) (holding a

plaintiff must exhaust administrative remedies prior to filing suit under Title VII), *cert. denied*, 523 U.S. 1136 (1998); *Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991) (same for TCHRA claims). This requirement precludes a trial court from considering claims of discrimination omitted from a plaintiff's EEOC charge. *Anderson v. Lewis Rail Service Company*, 868 F.2d 774, 775 (5th Cir. 1989). "The scope of inquiry of a court hearing in a Title VII action 'is limited to the "scope" of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Young v. City of Houston, Texas*, 906 F.2d 177, 179 (5th Cir. 1990) (quoting *Sanchez v. Standard Brands*, 431 F.2d 455, 466 (5th Cir. 1970)). This requirement serves the dual purposes of giving the employer some warning as to the conduct about which the employee is complaining and affording the EEOC and the employer an opportunity to settle the dispute through conciliation. *Sanchez*, 431 F.2d at 466 ("A charge of discrimination is not filed as a preliminary to a lawsuit. On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC.").

Stevenson does not plead that he has ever filed a charge with the EEOC alleging that Verizon discriminated against him on the basis of race or color. The only charge Stevenson has ever filed with the EEOC was filed on July 9, 2007. Verizon Wireless (VAW), LLC d/b/a Verizon Wireless & Verizon Wireless Texas, LLC d/b/a Verizon Wireless' Appendix in Support of Motion for Summary Judgment

and Motion to Dismiss ("Appendix") at APP00379-APP00380. This charge asserted that Verizon had retaliated against him as a result of his filing an internal complaint "on or about May 30, 2005, with John Lucas," a Human Resource Representative for Verizon. *Id.* Stevenson indicated by checking the box that the discrimination was based on retaliation, and did not check the boxes that would indicate Verizon had discriminated against him on the basis of race or color. *Id.* Moreover, along with the July 9, 2007 charge, Stevenson filed a Decision Not to File or to Drop Issues, where he stated that he was dropping all race allegations and instead wished to file "on retaliation." *Id.* at APP00383. Thus, the only charge the EEOC has had an opportunity to evaluate regarded Verizon's alleged retaliation against Stevenson for filing an internal complaint. Stevenson's claims for race discrimination under Title VII and the TCHRA must therefore be dismissed for failure to exhaust administrative remedies. *Barnes*, 118 F.3d at 408; *Schroeder*, 813 S.W.2d at 485.

### C. The Claim for Wrongful Termination Based on Stevenson's EEOC Charge

Stevenson argues that Verizon wrongfully terminated him in retaliation for filing his July 9, 2007 charge with the EEOC. Petition ¶ 35. Verizon moves to dismiss this claim on the grounds that Stevenson has not exhausted his administrative remedies by filing a charge with the EEOC alleging such retaliation. Defendants Verizon Wireless (VAW), LLC & Verizon Wireless Texas, LLC's Reply in Support of Their Motion to Dismiss ("Reply") at 2-3. Stevenson, however, argues that when an

employer terminates an employee in retaliation for filing a charge with the EEOC, that employee does not have to exhaust the available administrative remedies by filing a second charge with the EEOC complaining of the unlawful termination. Plaintiff Michael D. Stevenson's Response to Verizon Wireless Texas, LLC's Motion to Dismiss & Brief in Support ("Response") at 2-3.

Stevenson's support for this argument comes from *Gupta v. East Texas State University*, 654 F.2d 411, 414 (5th Cir. 1981). In *Gupta*, the plaintiff, Gupta, brought a Title VII suit alleging that his former employer discriminated against him on the basis of national origin and religion. *Id.* at 412. Gupta filed an EEOC charge complaining of the discrimination on July 9, 1975. *Id.* Later, in February of 1976, Gupta filed a second charge with the EEOC, alleging various acts of retaliation that resulted from his first charge. *Id.* at 413. After he filed this second charge, Gupta's employer notified him that his contract would not be renewed for the following year. *Id.* Gupta never filed a third charge with the EEOC complaining that his employer had discharged him in retaliation for his two charges with the EEOC. The court therefore questioned its jurisdiction over the retaliatory discharge issue since "the filing of an administrative complaint is a jurisdictional prerequisite to bringing suit under Title VII." *Id.*

The court, however, found that it did have jurisdiction to hear the retaliatory-discharge claim despite the absence of a third charge with the EEOC. *Id.* at 414. It

reasoned that "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge." *Id.* Thus, "[r]equiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case . . . [which] would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." *Id.* As a result, the court found that it could exercise ancillary jurisdiction over Gupta's retaliatory-discharge claim. *Id.*

Stevenson argues that the holding in *Gupta* should apply here to enable the court to hear his claim that Verizon discharged him in retaliation for filing his charge with the EEOC. The court agrees that *Gupta* is directly on point and requires that it not dismiss Stevenson's claim of wrongful discharge in retaliation for filing the EEOC charge. The court reaches this conclusion, however, only after carefully considering whether the rule in *Gupta* is still good law.

Recently, the Tenth Circuit questioned whether *Gupta*'s holding is still valid in light of *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). In *Morgan*, the Supreme Court held that a plaintiff has 300 days after an unlawful employment practice occurs to file a charge with the EEOC. *Id.* at 104-05. The Court interpreted the term "practice" to mean "a discrete act of single 'occurrence,' even where it has a connection to other acts." *Id.* at 111. Thus, the Court concluded that "[t]here is simply no indication that the term 'practice' converts related discrete acts into a single unlawful practice for the purposes of timely filing." *Id.*

*Morgan* does not require that plaintiffs file an EEOC charge for each discrete act. It merely holds that discrete acts are separate actionable unlawful employment practices for the purposes of determining *when* the plaintiff must file a charge in order to comply with the time limits in Title VII. See *id.* Nevertheless, the Tenth Circuit applied *Morgan*'s holding to conclude that "each discrete incident of [discriminatory] treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted." *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003). Under *Morgan*, termination is a discrete act. 536 U.S. at 114. Thus, the court in *Martinez* concluded that when an employee is terminated, the employee must file a separate charge with the EEOC. 347 F.3d at 1210-11. The court in *Romero-Ostolaza v. Ridge*, 370 F. Supp. 2d 139, 149 (D.D.C. 2005), reached the same conclusion. The opinion stated, "[g]iven *Morgan's* emphasis on strict adherence to procedure and on the severability of discrete acts such as termination, failure to promote, and denial of transfers, and given *Morgan's* rejection of the various continuing violation doctrines of the Circuit Courts, it makes sense to apply *Morgan* to bar subsequent discrete acts that a plaintiff fails to exhaust in the administrative process." *Id.* (internal citations omitted).

The court agrees that it does "make sense" to interpret *Morgan*'s language as requiring the conclusion reached in *Martinez* and *Romero-Ostolaza*. Nevertheless, the Fifth Circuit has yet to reach that conclusion. Currently, the Fifth Circuit holding in

*Gupta* still stands. See e.g., *Miller v. Southwestern Bell Telephone Company*, 51 Fed. Appx. 928, (5th Cir. 2002) (holding that under *Gupta*, the plaintiff need not file an additional charge with the EEOC for a retaliation claim "growing out of" his initial charge so long as the retaliation occurs after the filing of the initial charge). Although *Morgan* arguably calls that holding into question, the Supreme Court did not squarely address the issue presented in *Gupta*. *Morgan* merely reemphasizes the importance of treating discrete acts separately for the purpose of determining when the time limits for filing a charge with the EEOC expire. It does not address the policy considerations *Gupta* took into account in deciding that a plaintiff need not file a new charge with the EEOC when a new discrete act "grows out" of an act for which the plaintiff has already filed a charge with the EEOC. *Gupta*, 654 F.2d at 414. Until the Supreme Court or Fifth Circuit reassess the holding of *Gupta*, this court is bound to follow it. Thus, the court will not dismiss as unexhausted Stevenson's claim for wrongful termination in retaliation for filing his charge with the EEOC.

### D. The Claim for Wrongful Termination as a Result of Stevenson's Refusal to Commit Perjury

Stevenson contends that Verizon wrongfully terminated him in retaliation for his refusal to commit perjury during his deposition on July 20, 2007 in his capacity as a Verizon employee. Petition at 10. Under Texas common law, the general rule is that employment for an indefinite term may be terminated at will and without cause. *East Line & R.R.R. Co. v. Scott*, 10 S.W. 99, 102 (Tex. 1888). The Texas Supreme

Court created a narrow exception to that rule, however, in *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). In *Sabine Pilot*, the Court stated that an employer is not protected by the at-will employment doctrine if it discharges an employee "for the sole reason that the employee refused to perform an illegal act." *Id.* Thus, an employee can make a claim for wrongful termination if he can show that he was terminated solely because he refused to perform an illegal act. *White v. FCI USA, Inc.*, 319 F.3d 672, 676 (5th Cir. 2003) (citing *Sabine Pilot*, 687 S.W.2d at 735).

To succeed on such a claim, the plaintiff must show that the *sole* reason for his discharge was his refusal to commit the unlawful act. *Id.* Thus, where the plaintiff asserts more than one reason for his termination, the claim for a violation of the rule laid down in *Sabine Pilot* must be dismissed. *Guthrie v. Tifco Industries*, 941 F.2d 374, 379 (5th Cir. 1991) (holding that claims of age discrimination and wrongful discharge for refusal to perform an illegal act were mutually exclusive because the refusal to perform an illegal act must be the sole reason for the plaintiff's discharge), *cert. denied*, 503 U.S. 908 (1992); *Pease v. Pakhoed Corporation*, 980 F.2d 995, 997 n.1 (5th Cir. 1993) ("an employee who alleges wrongful discharge for refusing to perform a criminal act cannot advance additional claims").

Here, Stevenson argues Verizon wrongfully terminated him for several reasons. The original complaint states that he was terminated for "filing internal complaints with human resources, filing a complaint with the EEOC, and for refusing to commit

perjury." Petition at 9. Thus, Stevenson has plainly alleged multiple reasons for his wrongful termination. Under *Guthrie* and *Pease*, Stevenson cannot prevail on his claim for wrongful termination as a result of his refusal to perform an illegal act. This claim is therefore dismissed.

### E. The Claim for IIED

Stevenson also contends that Verizon's allegedly retaliatory actions against him were intentional and caused him severe emotional distress. Petition at 10. This is an improper claim of IIED. The tort of IIED was "never intended to duplicate existing statutory or common law remedies." Motion to Dismiss at 19. Instead, the "clear purpose" of the tort of IIED is to "supplement existing forms of recovery by providing a cause of action for egregious conduct 'that its more established neighbors in tort doctrine would technically fence out.'" *Standard Fruit and Vegetable Company, Inc. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998) (quoting *Towards a Jurisprudence of Injury: The Continuing Creation of a System of Substantive Justice in American Law*, 5-11, 5-13 (Report to the American Bar Association from the Special Committee on the Tort Liability System, 1984). In other words, a claim for IIED cannot stand merely because emotional distress is incidental to the commission of some other tort. *Id.* Thus, "[w]here the gravamen of a plaintiff's complaint is really another tort, intentional infliction of emotional distress should not be available." *Hoffman-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

Here, Stevenson argues that Verizon inflicted severe emotional distress upon him by (1) discriminating against him on the basis of his race, (2) terminating him for refusing to commit perjury, and (3) retaliating against him as a result of his filing the internal complaint with the human resources department of Verizon and the EEOC. The law provides a specific cause of action for all these wrongs. Texas case law provides a cause of action under the rule laid out in *Sabine Pilot* for wrongful termination as a result of refusal to commit an unlawful act. *Sabine Pilot*, 687 S.W.2d at 735. The TCHRA and Title VII provide a cause of action for claims of racial discrimination. Those statutes also provide Stevenson with a cause of action for any retaliatory actions Verizon took against him as a result of his filings with the EEOC. See *Tucker v. SAS Institute, Inc.*, 462 F. Supp. 2d 715, 730-31 (N.D. Tex. 2006) (entertaining a claim of retaliation for adverse employment action taken against the plaintiff after she filed a claim with the EEOC). Thus, the law provides Stevenson with an avenue to recovery for all the wrongs he allegedly suffered. Although emotional distress may have been an incidental effect of some of those alleged acts, the tort of IIED does not allow him to recover for that distress. *Standard Fruit and Vegetable Company*, 985 S.W.2d at 68 (holding that a claim for IIED cannot stand merely because emotional distress is incidental to the commission of some other tort). Thus, Stevenson's claim for IIED is dismissed.

III. CONCLUSION

For the reasons discussed above, Verizon's motion to dismiss is **GRANTED** in part and **DENIED** in part. The motion to dismiss Stevenson's claim for wrongful termination under *Sabine Pilot*, his claim for IIED, and his claims for violations of Title VII and the TCHRA on the basis of race is **GRANTED**. The motion to dismiss the plaintiff's claim for retaliation as a result of his filing a charge with the EEOC is **DENIED**.

**SO ORDERED**.

January 16, 2009.

*/s/ A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**