UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION


MICHAEL D. STEVENSON,⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀CIVIL ACTION NO.
VS.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀3:08-CV-0168-G
VERIZON WIRELESS (VAW), LLC⠀⠀)
d/b/a VERIZON WIRELESS, ET AL.,⠀⠀)⠀⠀⠀⠀⠀⠀**ECF**
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀)


## <u>MEMORANDUM OPINION AND ORDER</u>


Before the court is the motion of the defendants Verizon Wireless, LLC d/b/a

Verizon Wireless, and Verizon Wireless Texas, LLC d/b/a Verizon Wireless

(hereinafter collectively referred to as "Verizon" or "the defendants") for summary

judgment. Verizon seeks summary judgment on all the claims brought by the

plaintiff, Michael D. Stevenson ("Stevenson" or "the plaintiff"). In addition, the

defendants seek summary judgment on their counterclaims. For the reasons

discussed below, the defendants' motion for summary judgment on Stevenson's

claims is granted. The defendants' motion for summary judgment on their

counterclaims is denied. The defendants' motion for summary judgment also contains an argument that the defendants are entitled to a default judgment on their counterclaims. The court does not address that argument in this order. The plaintiff has filed a separate motion for leave to answer the defendants' counterclaims that is still pending. The court will address whether a default judgment is appropriate after ruling on that pending motion.

## I. BACKGROUND

In September of 1996, Verizon hired the plaintiff, Stevenson as a retail sales associate. Plaintiff's Original Petition ("Petition") at 3. By January of 2002, he had achieved the status of District Manager. *Id.* Around March 2005, Stevenson began to notice what he believed to be discriminatory practices at Verizon. *Id.* at 4. He was "particularly troubled" by the actions of Dolores Skarjune ("Skarjune"), his supervisor at the time. *Id.* Although Stevenson notified the Region President of Central Texas, Luis Cruz ("Cruz"), of these practices, Stevenson was not satisfied with Cruz's response. According to Stevenson, Cruz merely told him that he should consider "stepping down" because "sometimes life just isn't fair." *Id.* Stevenson then filed an internal complaint with Verizon's human resources department, alleging that Skarjune had harassed and mistreated African American employees such as himself. *Id.* Stevenson contends that this complaint prompted Cruz to take retaliatory actions against him. *Id.*

According to Stevenson, these retaliatory actions included Cruz moving him "from the high producing and profitable accounts that Mr. Stevenson had invested considerable time and energy developing." *Id.* Verizon admits that it transferred the accounts, but contends that the reassignments were not retaliatory, but part of a company wide reorganization of its business model. Defendants' Brief in Support of Their Motion for Summary Judgment ("Motion for Summary Judgment") at 8. Verizon intended this reorganization to boost sales through indirect channels such as Wal-Mart. *Id.* at 8-9. The reorganization plan included increasing the minimum sales requirements for all District Managers, which included Stevenson. *Id.* Stevenson, however, contends that this increase in sales requirements was aimed only at him, and that the Hispanic District Managers who took over his old accounts were not required to meet the same standards. Petition at 5. He also contends that he was assigned to a new geographical area as a result of the reorganization. Stevenson argues this area had been grossly neglected prior to his assignment to it. *Id.* He viewed this reassignment as retaliatory, arguing that Cruz assigned him the impossible task of increasing sales in a previously neglected region in the hopes that he would fail. *Id.* When Stevenson failed to meet the minimum sales requirements, Verizon issued a written warning on June 15, 2007. Motion for Summary Judgment at 10.

After Stevenson received the first written warning, he filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Texas Workforce Commission ("TWC") on July 9, 2007. *Id.* at 11. During that same month, Stevenson was set to be deposed as a witness in an arbitration proceeding in his capacity as a Verizon employee. Petition at 6-7. Before the deposition, Stevenson met with Verizon attorneys in order to prepare. *Id.* at 7. During that preparation meeting, the attorneys showed Stevenson a set of questions they planned to ask during the deposition, and a set of answers for Stevenson to look at to aid him in preparing for the deposition. Stevenson felt the attorneys were putting words in his mouth and were not interested in the truth. *Id.* Stevenson informed them that he would only answer the questions truthfully. *Id.* On the day of the deposition, July 20, 2007, Stevenson answered the questions truthfully. Shortly thereafter, on July 27, 2007, Stevenson received a final written warning regarding his failure to meet the minimum sales requirements. *Id.* at 8. Stevenson believed this was in retaliation for his refusal to commit perjury for Verizon. *Id.*

On September 24, 2007, Verizon suspended Stevenson with pay. On October 11, 2007, Verizon terminated Stevenson's employment. *Id.* Verizon contacted Stevenson and informed him that the termination was a result of his violating the code of business conduct. Motion for Summary Judgment at 15-16. Specifically, Verizon believed that Stevenson disclosed confidential, proprietary and

privileged information. *Id.* at 12-15. Stevenson contends, however, that he was actually terminated for filing internal complaints with human resources, filing complaints with the EEOC, and refusing to commit perjury during his deposition on July 20, 2007. *See generally* Petition.

Stevenson filed this suit against the defendants on December 27, 2007. The complaint alleged Verizon had (1) violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* by discriminating against him on the basis of race, (2) violated the Texas Commission on Human Rights Act ("TCHRA"), Tex. Lab. Code § 21.001 *et seq.* by discriminating against him on the basis of race (3) committed the tort of intentional infliction of emotional distress ("IIED"), (4) retaliated against him for filing internal complaints with human resources and a complaint with the EEOC, and (5) wrongfully discharged him as a result of his refusal to commit perjury during the July 20, 2007 deposition. See generally *id.* The court has already dismissed most of these claims in a separate opinion. Only two claims remain: (1) the claim for wrongful termination in retaliation for Stevenson filing a charge with the EEOC, and (2) the claim alleged in that charge, namely, retaliation for filing an internal complaint with the human resources department of Verizon.

## II. <u>ANALYSIS</u>

### A. <u>Legal Standard for Summary Judgment</u>

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986). While all of the evidence must be viewed in a light most favorable to the nonmovants, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movants make the necessary showing by informing the court of the basis of their motion and by identifying the portions of the record which reveal there are

no genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

If the movants make the required showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovant cannot survive a motion for summary judgment, however, by merely resting on the allegations in his pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

B.  <u>The Claim for Termination in Retaliation for the EEOC Filing</u>

Stevenson filed a charge with the EEOC on July 9, 2007. Motion for Summary Judgment at 11. He alleges that Verizon terminated him partly in

retaliation for filing that charge. To sustain a *prima facie* claim of retaliation, Stevenson must show that (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse action. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Only the closeness in time between the EEOC charge and Stevenson's termination supports a causal link between the two events. Verizon terminated Stevenson on October 11, 2007, barely over three months after he filed his charge. The Fifth Circuit has held that closeness in time "between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. General Services Administration*, 110 F.3d 1180, 1188 (5th Cir.). *cert. denied*, 522 U.S. 948 (1997). The court was careful to note, however, that once an "employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive." *Id.* Thus, the court now examines Verizon's explanation of Stevenson's termination.

According to Verizon, Stevenson was terminated for violating the code of conduct. Motion for Summary Judgment at 15-16. Specifically, Verizon had reason to believe that Stevenson had disclosed confidential information to a third party. In 2007, Verizon and Celltex Cellular, Inc. ("Celltex") and its owner Rick Giordano

("Giordano") agreed to submit to arbitration a dispute pending between them. *Id.* at 12. Celltex sought to depose Stevenson to prepare for the arbitration. *Id.* The deposition took place on July 20, 2007. *Id.* Stevenson met with Verizon's attorney on July 5, 2007 to prepare for the deposition. Later, in September of 2007, Verizon received information that sometime between July 5, 2007 and July 20, 2007, Stevenson met with Giordano and described the questions he had gone over with Verizon's attorney, told Giordano that he would feign support for Verizon during the deposition but would respond in a way that would help Giordano instead, informed Giordano that he had withheld information from Verizon's attorney, and gave Giordano privileged information about other customers and their relationship with Verizon. *Id.* at 13.

Monica Comeaux ("Comeaux"), the Associate Director of Human Resources for the South Central Texas Region of Verizon, was the Verizon employee who discovered that Stevenson had been communicating with Giordano. Verizon Wireless (VAW), LLC d/b/a Verizon Wireless & Verizon Wireless Texas, LLC d/b/a Verizon Wireless' Appendix in Support of Motion for Summary Judgment and Motion to Dismiss ("Defendants' Appendix") at APP01226, APP01233. Giordano's attorney provided Comeaux with detailed notes Giordano took during his conversation with Stevenson. *Id.* at APP01233. When Comeaux reviewed these notes, it became clear to her that the information in the notes could not have come

from anyone but Stevenson.  *Id.*  The notes contained confidential and proprietary information about the agents, or channels, through which Verizon sold its products (such as Wal-Mart).  *Id.*  Comeaux met with Stevenson on October 2, 2007 to offer him an opportunity to explain the existence of these notes.  *Id.*  Stevenson denied that he had ever met with Giordano and stated that everything in the notes was false.  *Id.* at APP01234.  After this meeting, Comeaux concluded that Stevenson had lied about his discussions with Giordano and had actually disclosed confidential, proprietary, and privileged information to Giordano.  *Id.* at APP01235.  Comeaux based this conclusion on Giordano's notes and the fact that the notes contained information that no one but Stevenson could have known.  *Id.*  She terminated Stevenson shortly thereafter on October 11, 2007.  *Id.* at APP01237.

As the above facts make clear, Verizon has offered a business-based, non-retaliatory explanation for terminating Stevenson.  Thus, although the termination came only three months after Stevenson filed his charge with the EEOC, Verizon's non-retaliatory explanation of his termination shifts the burden back to Stevenson to "offer some evidence from which the jury may infer that retaliation was the real motive."  *Swanson*, 110 F.3d at 1188.  Stevenson's attempt to offer such evidence is unavailing.  First, Stevenson argues that Giordano's notes are hearsay and therefore cannot be considered by the court.  Plaintiff Michael D. Stevenson's Response to Verizon Wireless Texas, LLC's Motion for Summary Judgment & Brief in Support

("Response") at 11. This is incorrect. Federal Rule of Evidence 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." According to this definition, Giordano's notes are not hearsay. The court is not concerned with whether the statements made in Giordano's notes are true. These notes are only relevant to demonstrate the impact they had on Comeaux. Thus, the notes are not offered for "the truth of the matter asserted." FED. R. EVID. 801(c). Comeaux asserts that she believed the notes were authentic and that she fired Stevenson as a result. Stevenson has offered no evidence to the contrary demonstrating that her actual motive was to retaliate against Stevenson for his EEOC charge.

The only evidence Stevenson offers that casts even a little doubt on whether a Verizon employee believed Giordano's notes were authentic is a statement made by William McKinney ("McKinney"), the Director of Indirect Sales, to whom Stevenson reported beginning in August of 2005. During his deposition, McKinney stated that he believed not all of Giordano's statements made during his deposition were truthful.[1] Response at 11. Stevenson has thus shown that one Verizon employee believed Giordano was not always entirely honest. According to Comeaux's testimony, however, it was she -- and not McKinney -- who made the decision to fire

---

[1] The deposition transcript states, "Q: So you believe some statements Mr. Giordano made were truthful; is that correct? A: Yes, some were. Q: And you believe some statements Mr. Giordano made were not truthful, correct? Is that your sworn testimony today? A: Yes." Plaintiff's Appendix at 30.

Stevenson. Thus, even if McKinney had stated that he believed the notes were an outright fabrication, his testimony would be irrelevant. That is certainly not the case, however. All McKinney states at his deposition is that he believes Giordano was not entirely truthful. *Id.* This evidence does not create a genuine issue of material fact as to whether Comeaux relied on Giordano's notes in deciding to terminate Stevenson. All Stevenson has shown is that McKinney believed Giordano was not always truthful. A reasonable juror could not conclude from this information that Comeaux believed Giordano was dishonest -- so dishonest as to create fraudulent notes -- and then lied about believing the notes in order to fire Stevenson in retaliation for filing a charge with the EEOC. Stevenson has not carried his burden of showing "some evidence from which the jury may infer that retaliation was the real motive." *Swanson*, 110 F.3d at 1188. The defendants' motion for summary judgment on the claim of retaliation resulting from Stevenson's charge with the EEOC is granted.

### C. The Retaliation Claim Alleged in Stevenson's EEOC Charge

On or about May 30, 2005, Stevenson filed an internal complaint with the human resources department of Verizon. On July 9, 2007, Stevenson filed a charge with the EEOC alleging that Verizon had taken actions against him in retaliation for filing the internal complaint. Specifically, Stevenson argued that Verizon employees harassed him, removed him from his successful accounts and placed him on less

successful accounts, and subjected him to higher sales standards than any of his colleagues.[2]  Verizon now moves for summary judgment on this retaliation claim.

To sustain a *prima facie* claim of retaliation, Stevenson must show (1) he engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse action.  *McCoy*, 492 F.3d at 556.  Verizon argues Stevenson cannot succeed on such a claim for three reasons.  First, Verizon contends that Stevenson never suffered an "adverse employment action."  Motion for Summary Judgment at 19-22.  Next, Verizon argues that Stevenson has produced no evidence demonstrating a causal link between the internal complaint filed on May 30, 2005 and the allegedly adverse subsequent employment actions.  *Id.* at 25-26.  Finally, Verizon states that Stevenson cannot rebut the legitimate, non-retaliatory business reasons for its employment actions.  *Id.* at 27.  The court agrees that Stevenson has provided no evidence suggesting a causal link between the internal complaint and the allegedly retaliatory actions that followed.  As discussed below, Verizon provides evidence explaining the business purpose behind all of the allegedly retaliatory actions.  Stevenson does not challenge any of this evidence and offers none of his own to contradict it.

---

[2]      In his original petition, Stevenson claims that these actions were taken in part because of his race, and in part as retaliation for filing an internal complaint with Verizon's human resources department.  Since the claims of racial discrimination have already been dismissed, the court now only concerns itself with the claim of retaliation.

In early 2006, McKinney began forming ideas on how to improve sales through "indirect channels" such as Wal-Mart. Motion for Summary Judgment at 8. The final plan included assigning district managers such as Stevenson to smaller geographic districts so they could visit the retailers more often. *Id.* McKinney also wished to add another district manager position and "mix up the type of indirect accounts (agent versus retailer) managed by the [district managers] to spark new ideas on how to maximize sales and productivity." *Id.* McKinney announced this reorganization plan in October of 2006. *Id.* Stevenson, however, interpreted this reorganization as a veiled attempt to remove him from his successful accounts that he had worked to develop and move him to less successful accounts. Petition at 5.

In April of 2007, McKinney began to focus on improving sales at Wal-Mart. Motion for Summary Judgment at 9. Sales at Wal-Marts in the South Central Region were lower than sales in other regions. As a result, McKinney set a minimum number of sales for each Wal-Mart to which a district manager was assigned "[t]o ensure that all [district managers] were proactively seeking ways to improve sales." *Id.* at 9. When Stevenson failed to meet this minimum, McKinney issued a verbal warning. *Id.* at 10. On June 15, 2007, when Stevenson still had not met the minimum, McKinney issued a written warning. McKinney also issued a verbal warning to another employee on June 18, 2007 for failing to meet the minimum sales requirements. Stevenson nevertheless felt the warnings were personal attacks

resulting from his filing an internal complaint with human resources on May 30, 2005.

Verizon has offered non-retaliatory motives for all the allegedly retaliatory actions Stevenson alleges. The defendants also filed affidavits and declarations in support of these non-retaliatory motives. Stevenson, however, has offered no evidence to support his claims that these actions were actually taken in retaliation for his internal complaint filed in 2005. All Stevenson offers in response to the defendants' motion for summary judgment are the same allegations made in his petition. He claims that the he was removed from his highly productive accounts. *Response* at 8. He argues that this "transfer" was really a demotion, but offers no evidence or explanation as to why he believes this to be the case. *Id.* He points to discrepancies between his and other district managers' target sales goals, but again, offers no evidence in support of his belief that these discrepancies were the result of retaliation. *Id.* All Stevenson offers is the reiteration of his belief that Verizon's actions "are clear evidence of a pattern of retaliatory actions to force Mr. Stevenson out of the company." *Id.* at 10. He has not produced one iota of evidence to contradict the non-retaliatory business reasons offered and supported by Verizon.

Once the movant has established that there is no genuine issue of material fact, the burden shifts to the nonmovant to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Instead,

the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Stevenson has not met this burden. He has cast no doubt on the non-retaliatory motives Verizon offers, and has produced no evidence suggesting a different motive exists. Verizon's motion for summary judgment is therefore granted.

D. <u>Defendants' Motion for Summary Judgment on the Counterclaims</u>

Verizon asserts two counterclaims against Stevenson: (1) breach of fiduciary duty of loyalty, and (2) breach of contract. Motion for Summary Judgment at 36-44. Verizon argues that by divulging the privileged and proprietary information to Giordano, Stevenson both breached his duty of loyalty to his employer and the code of conduct contract he signed with Verizon. *Id.* Verizon now seeks summary judgment on these claims.

1. *Legal Standard*

There is a slightly different legal standard that applies when the party seeking summary judgment is the party who will bear the burden of proof at trial. Under this standard, summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).[3] "[T]he substantive

---

[3] The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would

(continued...)

law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of [the record] which [it] believes demonstrate the absence of a genuine issue of material fact." *Celotex Corporation v. Catrett*, 477 U.S. 317, 323 (1986); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). When, as here, the movant bears the burden of proof on a claim for which it is moving for summary judgment, the movant must come forward with evidence that establishes "beyond peradventure all the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. UpJohn Company*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). A plaintiff's showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the plaintiff, otherwise there is a genuine issue of fact and summary judgment cannot be granted. See *Anderson*, 477 U.S. at 248.

Once the moving party has carried its burden, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a

---

³(...continued)
otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir.1986).

genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. While all of the evidence must be viewed in a light most favorable to the motion's opponent, *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). If the nonmovant's "evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

2. *The Breach of Fiduciary Duty Claim*

Verizon contends that Stevenson breached his duty of loyalty to Verizon when he divulged proprietary and privileged information to Giordano. To succeed on a breach of fiduciary duty claim, the plaintiff must show (1) the defendant owed the plaintiff a fiduciary duty, (2) the defendant breached that duty, and (3) the plaintiff suffered damages as a result of that breach. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (applying Texas law). Verizon contends it can establish there is no genuine issue of material fact on any of these elements. The court disagrees.

Verizon bases its claim for breach of fiduciary duty on Stevenson's conversation with Giordano and the notes Giordano took during that conversation.

Motion for Summary Judgment at 36-37. According to Verizon, it was during this alleged conversation that Stevenson breached the duty of loyalty by divulging privileged and proprietary information. *Id.* at 37-38. Verizon relies entirely on Giordano's notes for proof that this conversation took place. *Id.* at 38. Thus, in order for the court to grant Verizon's motion for summary judgment on this claim, it would have to find that there is no genuine issue of material fact as to whether Giordanos' notes are authentic. Verizon argues the court should so find because Giordano's handwritten notes are "incontrovertible documentary evidence" that the conversation took place. Stevenson, however, vehemently contends that these notes are bogus and that the conversation they allegedly record never took place. Response at 14 (citing Plaintiff's Appendix at 17-22, 26). This testimony creates a genuine fact issue as to whether the conversation ever took place and as to whether the information contained in the notes is reliable.[4] Thus, Verizon cannot establish that there is no genuine issue of material fact as to whether Stevenson breached his duty of loyalty to the company.

---

[4]     It should be noted that although the court finds a genuine fact issue exists as to whether this conversation ever took place, this does not call into question its earlier conclusion that there is no genuine fact issue as to whether Comeaux *believed* the notes were authentic and relied on them in terminating Stevenson. Stevenson presented no evidence to call that testimony into question.

### 3. *The Breach of Contract Claim*

The same reasoning applies to Verizon's motion for summary judgment on the breach of contract claim. To make out a claim for breach of contract, Verizon must show that (1) it had a valid, enforceable contract with Stevenson, (2) it performed its obligations under the contract, (3) Stevenson breached that contract, and (4) Verizon suffered damages as a result. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Association*, 205 S.W.3d 46, 55 (Tex. App. – Dallas 2006) (pet. denied). Verizon relies on Giordano's notes as its only evidence that Stevenson breached the code of conduct by disclosing attorney-client communications, disclosing nonpublic information about Verizon customers, and disclosing confidential and proprietary information related to Verizon's business. Motion for Summary Judgment at 43-44. As discussed above, Stevenson contests the validity of those notes, creating a genuine issue of material fact as to their authenticity. Response at 14 (citing Plaintiff's Appendix at 17-22, 26). The court cannot grant summary judgment on the breach of contract claim.

## III. <u>CONCLUSION</u>

For the reasons discussed above, Verizon's motion for summary judgment on the claims Stevenson brings against it is **GRANTED**. The court **DENIES**, however, Verizon's motion for summary judgment on its counterclaims against Stevenson.

**SO ORDERED**.

January 16, 2009.

A. JOE FISH
**Senior United States District Judge**